# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Michael Kowalok, | ) | CASE NO. 4:25-CV-02161 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| ARB Gaming, LLC d/b/a MODO, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT ARB GAMING, LLC D/B/A MODO'S
## MOTION TO COMPEL INDIVIDUAL ARBITRATION

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), defendant ARB Gaming, LLC d/b/a Modo ("ARB"), by and through its undersigned counsel, hereby move this Court for an order compelling Michael Kowalok ("Plaintiff"), a customer of ARB, to submit his claims against ARB to individual arbitration and stay any further litigation activity and deadlines applicable until the completion of such arbitration.  As grounds for this motion, ARB relies on its contemporaneously filed Memorandum of Law in Support and supporting Declaration of William Colello, ARB's Vice President of Player Operations.

Contemporaneous with this Motion to Compel, ARB has filed a Motion to Dismiss Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(2).  Accordingly, ARB respectfully requests that this Court dismiss Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(2), or alternatively, grant its Motion to Compel Arbitration and compel Plaintiff's claims to arbitration.

WHEREFORE, subject to the above order of review, ARB respectfully requests that this Honorable Court enter an order compelling arbitration and staying all further litigation of

Plaintiff's claims against it until completion of the arbitration, and for such other and further relief that the Court deems just and equitable.

Dated: November 24, 2025

*s/ Robert A. Zimmerman*
Robert A. Zimmerman (0055478)
Jaquan S. Williams (0100189)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email: rzimmerman@beneschlaw.com
           jawilliams@beneschlaw.com

**DUANE MORRIS LLP**
Walter A. Saurack (admitted pro hac vice)
22 Vanderbilt
335 Madison Ave. 23rd Floor
New York, NY 10017
Phone: 212-404-9200
Email: wasaurack@duanemorris.com

Gregory Bailey (pro hac vice application to follow)
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
Phone: 305-960-2250
Email: gbailey@duanemorris.com

*Attorneys for ARB Gaming, LLC d/b/a MODO*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARB GAMING, LLC D/B/A MODO'S MOTION TO COMPEL INDIVIDUAL ARBITRATION**

**I.      INTRODUCTION**

Michael Kowalok ("Plaintiff"), a customer of defendant ARB Gaming, LLC d/b/a Modo ("ARB"), filed his putative class action Complaint on October 8, 2025, asserting four causes of action against ARB: (1) declaratory judgment that ARB's games are illegal under O.R.C. § 2915, *et seq.*; (2) recovery under the Ohio gambling loss recovery statute, O.R.C. § 3763, *et seq.* (the "Ohio Loss Recovery Act" or "LRA"); (3) violations of the Ohio Consumer Sales Practices Act, O.R.C. § 1345, *et seq.*; and (4) unjust enrichment. Compl. ¶¶ 108–53. Plaintiff's claims are subject to arbitration on an individual basis[1] because every Ohio customer of ARB's platform (modo.us, the "Platform")—including Plaintiff himself—affirmatively accepted and agreed to arbitrate individually through the Terms of Use (collectively, the "Terms"), each of which included a class action waiver and provision requiring ***arbitration of all past, pending, and future disputes***. See Declaration of William Colello in Support of Defendant ARB Gaming, LLC's Motion to Compel Arbitration ("Colello Decl.") ¶¶ 10, 17-19, 23, attaching Exhibit A (the relevant Terms).

Notably, Plaintiff does not dispute that he agreed to the Terms, but rather that the Terms (and the arbitration provision therein) are void under O.R.C. § 3763.02 and *Lester v. Buel*, 49 Ohio St. 240, 257 (1892) and/or that the Terms are unconscionable as an adhesion contract, without citing any additional support. Compl. ¶¶ 85–91. Neither argument is persuasive.

The rationale of *Lester* was tied to the unique context on the future prices of grain in the market—whose illegality, unlike the markedly different games at issue here, was beyond any

---

[1] ARB files this motion to compel arbitration concurrently with its motion to dismiss for lack of personal jurisdiction. ARB asks that the Court hear and decide this motion to compel Arbitration after it decides its motion to dismiss based upon lack of personal jurisdiction.

1

serious dispute because the legality of wagers on the rise and fall of prices of personal property where the property was not to be delivered had already been determined in Ohio. However, there has been no decision in Ohio that ARB's games—which do not require any money to play—are somehow illegal "gambling" such that the Terms, or any arbitration provision therein, are void.

The arbitration provisions are "valid[ and] irrevocable," 9 U.S.C. § 2, and must be "rigorously enforce[d] . . . according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Plaintiff, an actual user of the Platform, is obligated to arbitrate his dispute pursuant to the Terms. And, to allow Plaintiff to seek class representation of other users without regard to the Terms that apply to the other users themselves, would afford Plaintiff greater rights than the users who are also bound by the applicable Terms.

Notably, every court to have considered the exact question raised here found that identical statewide claims under the LRA were subject to arbitration on the same grounds raised herein. *See, e.g.*, *Deleon v. Sweepsteaks Limited*, No. 1:25-CV-11481 (D. Ma. Nov. 20, 2025) ("[T]he existence of the arbitration agreement is not in dispute here. The parties' disagreement involves a different issue – whether the arbitration clause itself is void. . . . Because the parties delegated issues of arbitrability to the arbitrator, the question of the validity of the arbitration agreement is to be resolved by the arbitrator."); *Kennedy v. VGW Holdings Ltd.*, No. 1:24-CV-2184-TWT, 2025 WL 1932750, at *5-6 (N.D. Ga. July 14, 2025) (compelling arbitration of class action plaintiff's claims against online gaming operator because she accepted the terms of use and arbitration provision); *Ambrosia v. Blazesoft, Ltd., et al.*, No. 1:25-cv-01723 (N.D. Ill., Oct. 21, 2025) (compelling arbitration for putative class because customers accepted the terms and any question of the arbitration agreement was delegated exclusively to the arbitrator); *Bishoy Nessim v. Fliff, Inc.*, No. 5:23-cv-01048-SSS-SHK, 2024 WL 1600649, at *19-20 (C.D. Cal. Jan. 5, 2024)

(granting motion to compel arbitration for gaming defendant and finding whether defendant's operations constitute illegal gambling goes to the legality of the contract as a whole, not to the validity of the arbitration clause specifically, and therefore is a question for the arbitrator).

For the reasons stated in this Memorandum, ARB respectfully requests that the Court compel arbitration and dismiss or stay this matter pending arbitration.

## II. STATEMENT OF FACTS

### A. The Parties and Claims

ARB offers customers the ability to access its free-to-play online social gaming platform designed solely for amusement and entertainment through the Platform, accessible at the following URL: modo.us. Colello Decl. ¶ 6. The Platform does not provide any essential or critical service, rather its users voluntarily choose whether to participate, and its users are free to stop playing at any time without consequence. The Terms, which includes an arbitration clause, present users with clear, straightforward terms governing their use of the platform. Courts have repeatedly enforced arbitration agreements in voluntary online-service contexts, including gaming platforms. *See, e.g.*, *Ranazzi v. Amazon.com*, 2015-Ohio-4411, ¶¶ 11-14 (6th Dist.) (finding plaintiff manifested assent to arbitration provisions in terms where plaintiff clicked on an "I agree" button when registering for an Amazon account and placing orders); *Rudolph v. Wright Patt Credit Union*, 2021-Ohio-2215, ¶¶ 54-58 (2d Dist.) (rejecting plaintiff's argument that he lacked constructive notice of the arbitration terms because they were sufficiently conspicuous, akin to a clickwrap agreement); *Campinha-Bacote v. AT&T Corp.*, 2017-Ohio-5608, ¶¶ 14-15 (10th Dist.) (affirming grant of motion to stay pending arbitration because plaintiff had assented to terms through clickwrap process); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1032 (9th Cir. 2016) (enforcing arbitration agreement for voluntary online service); *Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST,

3

2021 WL 2660433, at *4–5 (N.D. Cal. June 25, 2021) (finding online agreement not unconscionable where users could freely decline service).

Plaintiff is an Ohio resident who played ARB's games and now seeks to represent a putative class of Ohio residents who allegedly played and lost money on ARB's games. Compl. ¶¶ 92-107. His allegations against ARB in this case arise from his use of the Platform. *Id*. ¶ 92-96. The Complaint seeks declaratory relief under O.R.C. § 2915, *et seq.*, Compl. ¶¶ 108–14; recovery under the LRA, Compl. ¶¶ 115–30; for alleged violations of the Ohio Consumer Sales Practices Act, O.R.C. § 1345, *et seq.*, Compl. ¶¶ 131–48; and, unjust enrichment, Compl. ¶¶ 149–53. These claims arise directly from the services provided by ARB that Plaintiff used and the Terms he accepted when registering his account before playing any games.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), arbitration agreements are valid, irrevocable, and enforceable. 9 U.S.C. §§ 2-4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). And because Plaintiff's claims fall within the scope of the arbitration agreement, and because any challenges to enforceability must be decided by the arbitrator under the delegation clause, the Court should compel arbitration and stay this case pending its outcome. *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021) (express delegation clause and incorporation of arbitration rules "clearly and unmistakably show[] that the parties agreed to arbitrate issues of arbitrability"); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020) ("It's not about the ***merits*** of the case. It's not even about ***whether*** the parties have to arbitrate the merits. Instead, it's about ***who should decide*** whether the parties have to arbitrate the merits." (emphasis in original)).

### B. All Users of the Platform Agreed to the Terms and Arbitration Provisions

At all relevant times hereto, ARB required all users to first create a user account and register with the Platform prior to accessing, using, or playing any games on it. Colello Decl. ¶¶ 7-

4

10. The Platform also required all users to agree to and accept the then-applicable Terms, each of which included an arbitration provision during the relevant period. *Id.* ¶¶ 7-10, 15, 23.

A new user who wished to access the Platform must have affirmatively accepted and agreed to the Terms. *Id.* ¶¶ 7-9, 14, 29. In order to use the Platform or make any purchases in Ohio, all users were required by the programming and operation of the Platform to first create a user account and register with the Platform. *Id.* In order to access any of the games, all users were and are required to accept and agree to the Terms. *Id.* Acceptance of the Terms is and was accomplished by checking a box next to a statement that included the language "I agree with the <u>Terms of Service</u> and <u>Sweepstakes Rules</u>," prior to the confirmation of completion of the sign-up process. *Id.* ¶¶ 10-13. The statement is directly above a greyed-out button saying "Submit," and within the statement the hyperlinks to the "Terms of Service," and "Sweepstakes Rules" are bolded and in bright blue font against a dark background. *Id.* ¶¶ 10-13.

All of these features are reflected in the example screenshot below:



*Id.* ¶ 11 (**Figure 1**). In addition to requiring new users to accept the then-applicable Terms at the time of registration, from time-to-time the Terms were amended. *Id.* ¶¶ 14-18. After every

5

amendment to the Terms during the relevant period, every Platform user was required to re-agree to the amended Terms as a condition of continued use of the Platform and its services, upon their next login to or access of the Platform. *Id*.

When users accessed the Terms, all versions included a notice of the arbitration provision at the beginning. *Id*. ¶¶ 20-23. As a customer himself, Plaintiff created a customer account and registered with ARB prior to playing any games. *Id*. ¶¶ 17-19. Pursuant to the amendments to the Terms, Plaintiff accepted and re-agreed to the then-applicable Terms in place as a condition of continued use. *Id*. ¶¶ 18-19. The most recent version of the Terms that Plaintiff accepted and agreed to was the Terms dated August 4, 2025 (hereafter, the "August 2025 Terms"). *See id.* ¶ 19.

Importantly, the August 2025 Terms required arbitration of all disputes subject to application of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") rules, *id*. ¶ 24; Ex. A, § 17.10, and required that questions of arbitrability, enforceability, and validity be determined by an arbitrator, *id*. ¶ 21; Ex. A, § 17.2 ("You and MODO agree that any ***past, pending or future dispute, claim or controversy*** . . . (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability or arbitrability of this Agreement or the Terms of Use) . . . shall be determined by arbitration") (emphasis added). Likewise, pursuant to the August 2025 Terms, ARB and its customers agreed to arbitrate disputes on an individual basis and waived their rights to a trial by jury. *Id*. ¶¶ 23-25; Ex. A, §§ 17.16 ("You may only arbitrate or litigate on an individual claims basis only and for your own losses only."), 18 ("Waiver of Jury Trial"). Additionally, pursuant to the August 2025 Terms, ARB's customers also unconditionally waived their rights at least to bring, participate in, or recover relief from any class, collective, or other representative action. *Id*. ¶¶ 23, 26-27; Ex. A, § 17.16.

Again, all versions of the Terms during the relevant time period required arbitration of all disputes subject to application of AAA or JAMS Rules, and included an opt out provision. *Id.* ¶¶ 22-23, 26 (affirming unattached versions contained similar provisions). Though the exact language of each version of the Terms in effect during the relevant time period may have varied, each such version of the Terms contained: (1) an arbitration agreement wherein the parties agreed to arbitrate disputes on an individual basis and waived their rights to a trial by jury; (2) an opt out provision; and, (3) a waiver to bring, participate in, or recover relief from any class, collective, or other representative action. *Id.* ¶ 20, 25.; *id.* ¶¶ 22-23, 26 (affirming unattached versions contained similar provisions). Therefore, Plaintiff and all users who made purchases through the Platform, would have had to agree to be bound by all versions of the Terms, including the class action waiver provision and arbitration agreement. *Id.* ¶¶ 20, 23.

Accordingly, all claims by the Platform users—including Plaintiff's claims—by agreement to the Terms, are mutually subject to mandatory and binding arbitration. *Id.* ¶ 31.

### III. ARGUMENT

#### A. Legal Standard

The FAA applies to (1) "written [arbitration] provision[s]" (2) "evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA covers interstate commerce and intrastate commerce that would, "in the aggregate," have a "substantial effect on interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). The arbitration provision in the Terms is in writing, and the Platform permits online gaming, which are "transaction[s] involving interstate commerce." *See, e.g.*, *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997) ("Transmission of photographs by means of the Internet is tantamount to moving . . . across state lines and thus constitutes . . . interstate commerce."); *United States v. McEwan*, 445 F.3d 237, 245 (3rd Cir. 2006) ("[T]he Internet is an instrumentality and channel of interstate commerce[.]"). Furthermore,

7

ARB is not located in Ohio, so any alleged transactions involving the Platform and residents of Ohio must be interstate. Thus, the FAA applies to the transactions at issue.

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-46 (2011), and requires courts to compel arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue., 9 U.S.C. § 4; *see also Am. Express Co.*, 570 U.S. 228, 233 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms[.]" (internal citations omitted)). This policy extends to individualized arbitration proceedings. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). When a contract contains an arbitration clause, there is a presumption of arbitrability, and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts **shall** direct the parties to proceed to arbitration on issues as to which an arbitration agreement" applies. *Dean Witter Reynolds*, 470 U.S. at 218 (emphasis in original). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Thus, once this Court finds a valid written agreement to arbitrate, the Court must compel arbitration upon an application therefor.

  **B.**  **Users of the Platform Agreed to the Mandatory Arbitration Provisions**

As indicated above, customers/users, including Plaintiff, cannot register, use, or access the Platform without clicking a checkbox to indicate that they agree to the Terms when first registering

8

and subsequently re-agreeing to the then-applicable Terms. Colello Decl. ¶¶ 7-10. The Terms are prominently hyperlinked next to the checkbox—they are bolded and in bright blue font against a dark background. *Id.* ¶¶ 11-12. Despite Plaintiff's attempts to paint the Terms as an unconscionable adhesion contract, Compl. ¶ 89, the Terms are typical and enforceable "clickwrap" agreements. "Clickwrap is a . . . term for agreements requiring a computer user to 'consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction.'" *TruLogic, Inc. v. Gen. Elec. Co.*, 2021-Ohio-2860, ¶ 38 (2d Dist.) (alterations in original) (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1255 (10th Cir. 2012)).

Courts in the Sixth Circuit, Ohio courts, and elsewhere routinely grant motions to compel arbitration where the plaintiff-user agreed to online terms of service, including an arbitration clause, under signup flows materially identical to ARB's and found such clickwrap agreements sufficient to provide notice of terms of use. *See, e.g.*, *Adelstein v. Walmart Inc.*, 728 F. Supp. 3d 762, 768 (N.D. Ohio 2024) (granting Defendant's motion to compel arbitration where the terms in the clickwrap agreement were reasonably communicated to the plaintiff); *Ranazzi*, 2015-Ohio-4411, ¶¶ 11-14 (6th Dist.) (finding plaintiff manifested assent to arbitration provisions by clicking on an "I agree" button when registering for an Amazon account and placing orders); *Rudolph*, 2021-Ohio-2215, ¶¶ 54-58 (2d Dist.) (rejecting plaintiff's argument that he lacked constructive notice of the arbitration terms because they were sufficiently conspicuous, akin to a clickwrap agreement); *Campinha-Bacote*, 2017-Ohio-5608, ¶¶ 14-15 (10th Dist.) (affirming grant of motion to stay pending arbitration because plaintiff had assented to terms through clickwrap process).

Similarly, here, the Platform users had reasonable notice of the Terms, including the arbitration provisions. *Ranazzi*, 2015-Ohio-4411, ¶¶ 11-14; *Rudolph*, 2021-Ohio-2215, ¶¶ 54-58; *Campinha-Bacote*, 2017-Ohio-5608, ¶¶ 14-15. ARB customers acknowledged and agreed to the

Terms by clicking the checkbox above to the "Submit" button. Plaintiff's inability to negotiate the Terms and that he could not have used ARB's Platform without agreeing to the Terms is irrelevant. Nor does it matter that no independent signature was required to assent to the arbitration provision. *See, e.g.*, *Reed v. Best Buy Warehousing Logistics, LLCs*, 625 F. Supp. 3d 662, 666 (N.D. Ohio 2022) ("[P]laintiff gives no reason why her checking a box stating 'I Agree' cannot be considered an electronic signature, manifesting her assent to be bound.").

Accepting Plaintiff's interpretation would require the Court to find that no clickwrap agreements—*e.g.*, cellphone agreements, agreements for web services, etc.—could ever be enforceable, which is ludicrous.[2] Therefore, ARB's Terms—which Plaintiff agreed to—are enforceable clickwrap agreements.

### C. The Terms Delegated Questions of Arbitrability to the Arbitrator

The FAA creates a strong, liberal policy in favor of arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989). The FAA's heavy presumption in favor of arbitrability requires courts to resolve all doubt as to the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003) ("Supreme Court precedent dictates that we resolve any doubts as to arbitrability 'in favor of arbitration.'").

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate

---

[2] Further, the contract at issue here is for "nonessential recreational activity", which other courts examining similar platform terms have found minimal procedural unconscionability. *See, e.g., Nessim*, 2024 WL 1600649 (order granting motion to compel arbitration for gaming operator because applicable arbitration clause delegated questions to the arbitrator).

10

or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019); *see also In re: Automotive Parts Antitrust Litigation*, 951 F.3d 377, 381–82 (6th Cir. 2020) (finding gateway questions of arbitrability delegated to an arbitrator). Additionally, the Sixth Circuit has noted that "district courts in our circuit have long found that the incorporation of the [arbitration] Rules provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton*, 962 F.3d at 942; *see also McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019). Where parties have clearly and unmistakably shown intent to delegate issues of arbitrability to the arbitrator, issues of arbitrability are for an arbitrator to determine absent a question as to the validity of the arbitration agreement itself. *See Swiger*, 989 F.3d at 506 (express delegation clause and incorporation of arbitration rules "clearly and unmistakably show[] that the parties agreed to arbitrate issues of arbitrability").

Here, the August 2025 Terms—the last version that Plaintiff agreed to, Colello Decl. ¶ 19—delegated questions of arbitrability to the arbitrator. *Id.* ¶ 21; Ex. A, § 17.2 ("any past, pending, or future dispute . . . shall be determined by arbitration"). That is clear and unmistakable evidence that the parties intended for the issue of arbitration to be arbitrated.

Further evidence that the arbitration provision delegates substantive arbitrability to the arbitrator lies in the fact that the August 2025 Terms required adherence to JAMS rules. *Id.* ¶ 24; Ex. A, § 17.10. JAMS rules expressly provide that issues of jurisdiction and arbitrability shall be submitted to and ruled on by the arbitrator. (June 1, 2021), https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8. Incorporation of arbitral rules—such as JAMS rules—into an arbitration agreement is independently sufficient to delegate all questions of arbitrability to the arbitrator *as a matter of law*. *See Swiger*, 989 F.3d at 506 (express delegation clause and incorporation of arbitration rules "clearly and unmistakably show[] that the parties agreed to

11

arbitrate issues of arbitrability"); *Blanton*, 962 F.3d at 845-46) (finding incorporation of arbitral rules "provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'").

Under these circumstances, this Court should enforce the delegation clause within the Terms and compel Plaintiff to proceed with his case in arbitration.

**D.     The Class Action Waiver Is Enforceable**

Both the Supreme Court and courts in this Circuit have held that arbitration agreements precluding class action relief are valid and enforceable. *Am. Express Co.*, 570 U.S. at 236–39; *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 959 (N.D. Ohio 2009) (finding an arbitration agreement's class action waiver is enforceable consistent with the FAA and Ohio's public policy); *Howard v. Wells Fargo Minnesota, NA*, No. 1:06CV2821, 2007 WL 2778664, at *4 (N.D. Ohio Sept. 21, 2007) (finding that a class action waiver in the arbitration agreement was enforceable because plaintiff was still able to vindicate her rights and was "only limited to the forum in which she may establish her right to relief."). This is because a class action waiver "does not constitute the elimination of the right to pursue [a] remedy" but rather "merely limits arbitration to the two contracting parties." *Am. Exp. Co.*, 570 U.S. at 236.

Plaintiff agreed to the August 2025 Terms, which included both a class action waiver and required that customers arbitrate their claims on an individual basis. Colello Decl. ¶¶ 20, 23, 26-28; Ex. A, §§ 17, 17.16. There is nothing substantively unconscionable about the class action waiver. *Am. Exp. Co.*, 570 U.S. at 236–39; *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 857–59 (8th Cir. 2008).

Therefore, by agreeing to the August 2025 Terms, and the class action waiver therein, Plaintiff should be required to arbitrate his claim on an individual non-class action basis.

### E. Questions of "Voidness" Are Delegated to the Arbitrator

Plaintiff's reliance on *Lester* to argue that the Terms are void is misplaced. Compl. ¶¶ 88, 138. *Lester*, a case from 1892, dealt with individuals who were entering contracts, containing no arbitration provisions, to buy and sell grain with the intent to speculate in the rise or fall of prices in the grain market in Chicago. 46 Ohio. St. at 250-51. The parties would pay or receive the difference between the contract price and market price of the goods at the time for delivery, without delivering any goods, making it a gambling contract that was void under the statute. *Id*. at 253. That is not the case here. Further, allowing Plaintiff to circumvent the Terms and ARB's arbitration provision, would be incompatible with Ohio and U.S. Supreme Court precedents requiring the issue of the contract's validity to be considered by the arbitrator in the first instance. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2005); *Rudolph*, 2021-Ohio-2215, ¶¶ 54-58 (2d Dist.); *Campinha-Bacote*, 2017-Ohio-5608, ¶¶ 14-15 (10th Dist.). The language of the arbitration agreements and governing caselaw therefore unambiguously require Plaintiff to arbitrate not only the merits of his request for recovery, but also his threshold argument that the Terms are void. *See Buckeye Check Cashing*, 546 U.S. at 446; *In re: Automotive Parts Antitrust Litigation*, 951 F.3d at 381–82.

Any question about whether the Terms are void because they effectuate illegal gambling are to be resolved by the arbitrator, not the Court. Unless Plaintiff is challenging the validity of the arbitration clause itself—he is not, *see* Compl. ¶ 88 ("[T]he *entire* contract is void . . . .")—the FAA requires any issue of the contract's validity as a whole to be considered by the arbitrator in the first instance. *See, e.g.*, *Buckeye Check Cashing*, 546 U.S. at 445–46). There is no plausible argument here that ARB's customers, including Plaintiff, did not enter into the Terms, nor does Plaintiff allege as such. The issue of validity of the Terms is for the arbitrator to decide.

Plaintiff's claims are subject to arbitration particularly in light of the fact that he agreed to the Terms. To hold otherwise would allow Plaintiff to have it both ways—*i.e.*, adopting and advancing the claims for himself and of users while simultaneously shirking the obligations and limitations governing those other users' claims. *See Cleveland-Akron-Canton Advert. Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.*, 2009-Ohio-5699, ¶ 20 (8th Dist.) ("Once the third-party beneficiary has accepted the benefit of the contract, it can receive no greater rights from the contract than those possessed by the signatories."). Courts facing similar LRA claims in other states have likewise compelled arbitration for the customer seeking to represent a class. *See Sweepsteaks Limited*, No. 1:25-CV-11481, at *4 (compelling arbitration of plaintiffs' class action claims because of express delegation clause); *Kennedy*, 2025 WL 1932750, at *5-6 (compelling arbitration of plaintiff's class action claims against online gaming operator because she accepted the terms of use and arbitration provision); *Ambrosia*, Case No. 1:25-cv-01723 (same); *Nessim*, 2024 WL 1600649 (same in context of injunction action of gaming operator).

Therefore, the Terms are not void, and Plaintiff's claims are subject to arbitration.

### F. Plaintiff's Claims Are Within the Scope of Arbitration

There can be no question that if another ARB customer brought claims for declaratory judgment, under the LRA, the Ohio Consumer Sales Practices Act, or common law unjust enrichment, that such claims would be within the scope of arbitration. The August 2025 Terms included an arbitration provision requiring arbitration of "any past, pending or future dispute, claim or controversy arising out of or relating to any purchase or transaction by [the customer], [the customer's] access to or use of any Platform or the Service, or to this Agreement. . . ." Colello Decl. ¶ 21, Ex. A, § 17.2. Such claims fall squarely within the scope of the arbitration provision, as it "aris[es] out of or relat[es] to [] purchase[s] or transaction[s]" made using or on ARB's Platform. Colello Decl. ¶ 21, Ex. A, § 17.2; *see generally* Compl. ¶¶ 38, 129, 131-48.

Even if there were any doubts—which there are none—as to whether a user's claim falls within the scope of arbitration, this Court must resolve those doubts in favor of arbitration. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"); *W. Branch Loc. Sch. Dist. Bd. of Educ. v. W. Branch Educ. Ass'n*, 2015-Ohio-2753, ¶ 28 (7th Dist.) ("The law in Ohio is clear that arbitration is favored and any doubts in the applicability of a given provision should be resolved in favor of arbitration.").

Thus, Plaintiff's claims all fall within the scope of the arbitration provision.

IV. **CONCLUSION**

For the foregoing reasons, this Court should compel arbitration of Plaintiff's claims on an individual basis in accordance with the arbitration provisions in the August 2025 Terms of ARB's Terms and stay further proceedings pending the completion of such arbitration.

Dated: November 24, 2025

        *s/ Robert A. Zimmerman*
Robert A. Zimmerman (0055478)
Jaquan S. Williams (0100189)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email: rzimmerman@beneschlaw.com
       jawilliams@beneschlaw.com

**DUANE MORRIS LLP**
Walter A. Saurack (admitted pro hac vice)
22 Vanderbilt
335 Madison Ave. 23rd Floor
New York, NY 10017
Phone: 212-404-9200
Email: wasaurack@duanemorris.com

Gregory Bailey (pro hac vice application to follow)
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
Phone: 305-960-2250
Email: gbailey@duanemorris.com

*Attorneys for ARB Gaming, LLC d/b/a MODO*

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that this memorandum complies with the page limitation for standard track cases, such limitation applying in the absence of any track designation for this case.

        /s/ *Robert A. Zimmerman*
        One of the Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2025, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

                                                               /s/ *Robert A. Zimmerman*
                                                               One of the Attorneys for Defendant