**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL KOWALOK | ) | CASE NO. 4:25-CV-02161 |
| | ) | |
| Plaintiff, | ) | DISTRICT JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| | ) | |
| ARB GAMING, LLC D/B/A MODO, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Defendant. | ) | |

Pending is Defendant ARB Gaming, LLC d/b/a Modo's ("ARB") Motion to Compel

Individual Arbitration. (ECF No. 16). Plaintiff filed a Memorandum of Law in Opposition to

Defendant's Motion to Compel Arbitration. (ECF No. 22). Defendant then filed a Reply in

support of Motion to Compel Arbitration. (ECF No. 23).

## I.      Background

In his Complaint, Plaintiff, Michael Kowalok ("Kowalok"), individually and on behalf of

all others similarly situated brings this class action complaint alleging; (1) declaratory action that

gambling is illegal under Ohio law, (2) violations of the Ohio Revised Code, Section 3763.02 (3)

violations of the Ohio Consumer Sales Practice Act, (4) unjust enrichment. (ECF No. 1 at 23–

31). Plaintiff represents he is a resident of Hubbard, Ohio. *Id.* at ¶ 15. Defendant is a company

organized under the laws of Florida, with its principal place of business and headquarters located

in, Scottsdale, Arizona. *Id.* at ¶ 16. Defendant owns and operates MODO[1] ("Modo"), a gaming

website. *Id.*

---

[1] *See* https://www.modo.us/ (last accessed April 2, 2026)

The following facts are drawn from the Complaint, the Parties' briefing, and Defendant's Declaration, are construed in a light most favorable to the nonmoving party, to resolve this Motion to Compel individual arbitration. Defendant owns and operates online gaming platform, Modo, and develops games designed to simulate slot machines as well as games of chance including, jackpots, slots, roulette, baccarat and Megaways titles. (ECF No. 1, ¶¶ 2–4). Plaintiff represents that Modo advertises itself as a "social gaming," website, yet Modo operates "unlicensed and illegal online casinos within Ohio." *Id.* at ¶ 50. Though Defendant's online gaming is free to play, Modo uses two forms of virtual currency referred to as "gold coins" and "sweepstake coins." *Id.* at ¶ 8. Gold coins are provided upon signing up and during gameplay, but are marketed as possessing no real-world value. *Id.* On the other hand, sweepstakes coins cannot be purchased directly; instead, users who purchase packages of gold coins receive a specified number of sweepstake coins as a part of those purchases. *Id.* Unlike gold coins, sweepstake coins may be redeemed for real-world currency. *Id.* at ¶ 9.

Plaintiff further represents that he used Modo's gaming platform from approximately January 2024 through October 2025 from his home in Ohio. (ECF No. 1, ¶¶ 92–93). Upon sign-up, Plaintiff received both gold coins and sweepstake coins. *Id.* Plaintiff then began purchasing gold and sweepstake coins from Defendant. *Id.* Additionally, Plaintiff contends that he wagered and lost approximately $2,275.00 in real world currency while using Modo's gaming platform. *Id.* at ¶¶ 94–95.

Plaintiff seeks relief including, an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the Class as requested, and appointing Plaintiff as class representative and his counsel as class counsel. (ECF No. 1, at 31). Plaintiff further requests an award of all economic, monetary, actual, consequential, compensatory, and

2

punitive damages available at law as determined by proof, as well as appropriate relief for Plaintiff and class members, including actual and statutory damages. *Id.* Additionally, Plaintiff seeks reasonable attorneys' fees, costs and other litigation expenses, along with pre- and post-judgment interest as allowable by law. *Id.* Finally, Plaintiff requests such further and other relief as the Court considers just, proper, and equitable. *Id.*

### a. Arbitration Provision

Throughout the relevant period, Modo represents that their platform required each user to complete a registration process and create an account prior to using the gaming application. (ECF No. 16, at 7–8). In order to complete the registration process, users had to accept the Terms of Use, which included an arbitration provision. *Id.* Moreover, users accepted the Terms of Use by clicking a checkbox next to the following statement, "I agree with the Terms of Service and Sweepstakes Rules." (ECF No. 16, at 7). The user then clicked a blue button labeled, "Submit" to complete the sign-up process. *Id*. Modo contends the Terms were amended over time, including the relevant period, and every Platform user was required to agree to the amended Terms upon their next login. (ECF No. 16, at 8). ARB's Vice President of Player Operations stated in his declaration, "[t]hough the exact language of the Terms may have varied; all versions of the applicable Terms during the relevant time period required arbitration of all past, present or pending, and future disputes." (ECF No. 17, at ¶ 15). Modo further represents that Plaintiff accepted and agreed to the August 4, 2025, Terms of Use (the "Terms of Use") (ECF No. 16, at 8–9).

3

Modo also alleges that the Terms of Use contained the following notice and arbitration provision,

> THESE TERMS OF USE INCLUDE AN ARBITRATION AND CLASS ACTION WAIVER AGREEMENT WHICH REQUIRES THAT ANY PAST, PENDING, OR FUTURE DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. YOU MAY NOT PROCEED AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. ARBITRATION MEANS YOU WILL NOT BE ABLE TO SEEK DAMAGES IN COURT OR PRESENT YOUR CASE TO A JURY, UNLESS OTHERWISE PERMITTED BY THESE TERMS.

> OPT-OUT. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION ON A RETROACTIVE BASIS AND AS TO ANY FUTURE CLAIMS, AND YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION PROVISION WITH US IN CONNECTION WITH YOUR USE OF OUR SERVICES, YOU MAY OPT OUT OF THE ARBITRATION AGREEMENT WITHIN THIRTY (30) DAYS OF ENTERING THIS AGREEMENT BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE "BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER" – SEE SECTION 16 OF THESE TERMS, BELOW. OPT-OUT REQUESTS SENT AFTER THE THIRTY (30) DAY PERIOD SHALL BE NULL AND VOID. EVEN IF YOU OPT OUT OF THE ARBITRATION AGREEMENT IN SECTION 16, ALL OTHER REMAINING SECTIONS OF THESE TERMS APPLY.

> …

> You and Modo agree that *any past, pending, or future dispute, claim or controversy* arising out of or relating to any purchase or transaction by you, your access to or use of any Platform or the Service, or to this Agreement, the Terms of Use, or Privacy Policy (including without limitation *any dispute concerning* the breach, enforcement, construction, *validity, interpretation, enforceability, or arbitrability* of this Agreement or the Terms of Use) (a "Dispute"), *shall be determined by arbitration*, including claims that arose before acceptance of any version of this Agreement.

(ECF No. 17, at ¶¶ 20, 21).

4

Furthermore, Modo represents the Terms of Use included the following class action waiver,

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR MODO SHALL BE ENTITLED TO ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY. YOU MAY ONLY ARBITRATE OR LITIGATE ON AN INDIVIDUAL CLAIMS BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. UNDER THIS AGREEMENT, YOU MAY NOT PROCEED IN ARBITRATION OR COURT AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OR USE OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. YOU AND MODO ARE EACH WAIVING RESPECTIVE RIGHTS TO PARTICIPATE IN A CLASS ACTION. BY ACCEPTING THIS AGREEMENT, YOU GIVE UP YOUR RIGHT TO PARTICIPATE IN ANY PAST, PENDING OR FUTURE CLASS ACTION OR ANY OTHER CONSOLIDATED OR REPRESENTATIVE PROCEEDING, INCLUDING ANY PROCEEDING EXISTING AS OF THE DATE YOU AGREED TO THIS AGREEMENT.

(ECF No. 17, at ¶ 27). Finally, it is undisputed that Plaintiff accepted the terms of use, that his claims fall within scope of the terms, and that the Terms of Use contained an arbitration provision. *See generally* (ECF No. 22).

## II.     Law and Analysis

Modo moves this Court to compel individual arbitration because (1) all Modo users agreed to arbitrate individually through the Terms of Use, (2) the terms delegated questions of arbitrability to the arbitrator, (3) questions of voidness of the agreement are delegated to the arbitrator, and (4) Plaintiff's claims fall under the agreement. (ECF No. 16, at 6, 10, 12, 15–17). Plaintiff presents the following arguments against arbitration, (1) the terms containing the arbitration and delegation clause are void, (2) there is a lack of mutual assent making the contract illusory, (3) the arbitration agreement is unenforceable due to procedural and substantive

unconscionability. (ECF No. 22, at 13–29). This Court recommends the District Court grant Defendant's motion to compel individual arbitration for the reasons set forth below.

### a. Standard of Review

Under the FAA, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003) (quoting in part 9 U.S.C. § 2). The FAA "[m]anifest[s] a 'liberal federal policy favoring arbitration agreements...'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

"[T]he FAA 'is at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Id.*; *see Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). "Courts ... examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714 (citations omitted). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

When resolving motions to compel arbitration, courts apply the summary judgment standard under Rule 56 of the Federal Rules of Civil Procedure particularly when the parties submit matters beyond the pleadings. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Courts may consider both the pleadings and additional evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party. *Id.* "The burden is on the party opposing arbitration to show that the agreement is not enforceable." *Townsend v. Stand Up Mgmt.*, No. 1:18CV2884, 2019 WL 3729266, at *2 (N. D Ohio Aug. 8, 2022) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92).

### b. Whether the Parties Agreed to Arbitrate

The Court's first task is to determine whether the parties have agreed to arbitrate. In determining whether the parties agreed to arbitrate their dispute, the Court is to use the federal substantive law of arbitrability. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* Moreover, the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 20 (emphasis in original).

Regarding whether the parties have agreed to arbitrate, Modo contends Kowalok agreed to arbitrate any dispute with Modo when he created an account and registered with ARB before playing any games. (ECF No. 16, at 6–9). Kowalok does not dispute the existence or the scope of the Arbitration Agreement. *See generally* (ECF No. 22). Additionally, the Terms of Use included the August 4, 2025, Arbitration Agreement; therefore, when Kowalok created his account, he assented to that Agreement. (ECF No. 17, at ¶¶ 20, 21). The Terms of Use also included an opt-

7

out provision, which explicitly allows users to opt out of the Arbitration Agreement by providing notice to Modo. *Id*. Kowalok did not provide Modo with any form of notice, therefore confirming his agreement to be bound by the contract. (ECF No. 17, at ¶ 18).

As previously noted, when determining whether the parties have agreed to arbitrate, the Court relies on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure. *See Great Earth Cos.,* 288 F.3d at 889. To successfully argue that there is genuine dispute of the facts, Kowalok "must support the assertion by ... citing to particular parts of materials in the record, including ... affidavits or declarations" or by "showing that the materials cited do not establish the absence ... of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Because Kowalok does not dispute the existence or the scope of the Arbitration Agreement, the Court finds that his allegations do not create a genuine issue of material fact as to the existence of an Arbitration Agreement. *See* Fed. R. Civ. P. 56(e). As a result, the Court concludes an arbitration agreement existed between Modo and Kowalok.

### i. Illegal Purpose

Kowalok's first argument against arbitration concerns the alleged illegality of Modo's platform. (ECF No. 22, at 13–20). Kowalok contends, "Modo's casino games constitute illegal 'gambling' under applicable Ohio statutes, Modo's purported contractual Terms are therefore void *ab initio* and unenforceable." (ECF No. 22, at 16). And Kowalok argues that a valid contract was never formed as the consideration offered, access to Modo's platform, "constitutes participation in an illegal gambling enterprise prohibited by Ohio law." (ECF No. 22, at 8).

While disputes concerning contract formation are generally for the courts, issues of validity and enforceability should be "considered by the arbitrator in the first instance." 9 U.S.C. § 3; *Buckeye Check Cashing, Inc. v. Cardegna*. 546 U.S. 440, 444 (2006). Under Ohio law, the

illegality of a contract is widely treated as a matter of *enforcement*, not contract formation. *See Langer v. Langer*, 704 N.E.2d 275, 279 (Ohio Ct. App. 1997) ("Courts of law and equity will decline to *enforce* obligations created by contract if the contract is illegal or the consideration given for it is illegal, immoral, or against public policy.") (emphasis added); *see also Snyder v. Snyder*, 865 N.E.2d 944, 949 (Ohio Ct. App. 2007) ("This court has previously stated that 'Ohio courts will not *enforce* an illegal contract … because no rights can arise from an illegal contract.'") (emphasis added); *Fulton v. Chapman,* 1996 WL 737589, *3 (4th Dist. Dec. 20, 1996) ([c]ourts may not enforce illegal agreements."); *See Allied Delivery Sys. Co. v. Hamilton,* 1982 WL 4078, *3 (10th Dist. Apr. 1, 1982) (an illegal contract is "void ab initio and unenforceable from the date of its inception").

Although, this Court questions the legality of Defendant's gaming platform, these arguments do not prevail under the Supreme Court's holding in *Buckeye Check Cashing.* 546 U.S. at 440. In *Buckeye Check Cashing*, Respondents brought a class action in Florida state court, contending that Buckeye charged usurious interest rates, and that the Parties' Agreement violated various Florida lending and consumer protection laws. 546 U.S. at 443. Subsequently, Buckeye moved to compel arbitration. *Id.* The trial court denied the motion, "holding that a court rather than an arbitrator should resolve a claim that a contract is illegal and void *ab initio*." *Id.* The appellate court reversed, "holding that because respondents did not challenge the arbitration provision itself, but instead claimed that the entire contract was void, the agreement to arbitrate was enforceable, and the question of the contract's legality should go to the arbitrator." *Id.* Respondents appealed and the Florida Supreme Court reversed, reasoning that to enforce an agreement to arbitrate in a contract challenged as unlawful "'could breathe life into a contract

9

that not only violates state law, but also is criminal in nature ...'" *Cardegna v. Buckeye Check Cashing, Inc.*, 894 So.2d 860 (Fla. 2005), *rev'd and remanded*, 546 U.S. 440 (2006).

Moreover in *Buckeye Check Cashing*, the United States Supreme Court distinguished between a "challenge[ ] specifically [to] the validity of the agreement to arbitrate" and a "challenge[ ] [to] the contract as a whole, either on a ground that directly affects the entire agreement or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." 546 U.S. at 444. The Court held that arbitration provisions are severable from the remainder of the contract and the latter sort, where the "crux of the complaint is that the contract as a whole [ ] is rendered invalid," should be determined by the arbitrator in the first instance. *Id.* at 446; see *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Furthermore, the Court "simply rejected the proposition that the enforceability of the arbitration agreement turned on the state legislature's judgment," state public policy, or state contract law. *Buckeye Check Cashing*, 546 U.S. at 446.

Here, Kowalok argues that Modo operates an illegal gambling website, making their gambling-related contract, Terms of Use, Arbitration and delegation clauses void. (ECF No. 22, at 15). Kowalok additionally contends, "… because Modo's Terms are rooted in—and contingent upon— participation in an illegal gambling enterprise, they are void ab initio, and the arbitration and delegation provisions contained therein are unenforceable." *Id.* Therefore, Kowalok, repetitively challenges the illegality of the contract as a whole, as opposed to solely challenging the agreement to arbitrate. Furthermore, the problems and illegality of online gambling permeate throughout the complaint and cannot be characterized in any way other than Kowalok's main purpose in the complaint. *See e.g.* (ECF No. 1, at ¶¶ 1, 5, 50, 59) ("This case arises out of Defendant's operation of an illegal online casino in violation of Ohio law.")

10

("[Modo] facilitates and profits from illegal gambling") ("Despite Ohio's clear prohibition on online gambling, Defendant operates unlicensed and illegal online casinos within Ohio.") ("In sum, the games of chance offered by Modo—including slots and roulette— constitute gambling.") Thus, the "crux of the complaint" rule from *Buckeye Check Cashing* applies directly to this case and the arbitration clause is severable from the remainder of the contract and shall be determined by the arbitrator. *Buckeye Check Cashing*, 546 U.S. at 446. Accordingly, the Court cannot determine the issue of illegality as it should be given to the arbitrator in the first instance. Thus, whether the contract is void for illegality is a question for the arbitrator.

### c. Mutual Assent

Kowalok's second argument contends that the arbitration provision and the Terms of Use, "… fail[] for lack of mutual assent because Defendant reserves the right to unilaterally modify the terms without providing notice to users." (ECF No. 22, at 20). This argument is unavailing for the reasons below.

"Under Ohio common law, contract formation requires 'mutual assent (generally, offer and acceptance) and consideration. The plaintiff must also show ... a meeting of the minds and that the contract was definite as to its essential terms.'" *Faurecia Auto. Seating, Inc. v. Toledo Tool & Die Co., Inc.*, 579 F. Supp. 2d 967, 971 (N.D. Ohio 2008) (quoting *Nilavar v. Osborn*, 711 N.E.2d 726, 732 (Ohio Ct. App. 1998)); *see Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1195 (S.D. Ohio 2013) (citations omitted); *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2012) ("A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.") (citation omitted); *see also Bruzzese v. Chesapeake Exploration, LLC*, 998 F. Supp. 2d 663, 673 (6th Cir. 2014) (noting that, under Ohio law, the term "mutual assent" is used interchangeably with the term "meeting of the minds") (citations omitted); *Advance Sign*

*Grp., LLC v. Optec Displays, Inc.*, 722 F.3d 778, 784 (6th Cir. 2013) (citation omitted). Like any contract, arbitration agreements require the parties' mutual assent to be bound by the agreement. *Sandor v. Gen. Elec. Co.*, 2016 WL 6868452, at *2 (N.D. Ohio Nov. 22, 2016).

Plaintiff relies on both out of Circuit cases and cases interpreting out of state contract law to support his contentions, yet Ohio state law governs issues of mutual consent. *See Day v. Fortune Hi-Tech Marketing, Inc.*, 536 Fed. Appx. 600 (6th Cir. 2013); *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306 (6th Cir. 2000); *see e.g. Sandor*, 2016 WL 6868452, at *2. As Plaintiff notes, generally, "[a] contract cannot be unilaterally modified; the parties must mutually consent to the modification." *Ludwig v. Lydick*, 2011-Ohio-5164, ¶ 19 (Ohio Ct. App.). However, Ohio courts have found arbitration agreements enforceable even where a party retains the unilateral right to alter the agreement. *See Englert v. Nutritional Scis., L.L.C.*, 2008-Ohio-5062 (10th Dist.); *see also Qualls v. Wright Patt Credit Union*, 2021-Ohio-2055, ¶ 89 (2nd Dist.); *Stachurski v. DirectTV, Inc.,* 642 F. Supp. 2d 758, 769. Under Ohio law, unilateral reservation of rights provisions may be valid so long as they contain, "'unambiguous language, notice to the other party that the terms of the contract could be changed ... and acceptance by that party of the risk involved' by agreeing to the provision." *See Englert*, 2008-Ohio-5062, at ¶ 19; *see also Qualls*, 2021-Ohio-2055, at ¶ 89; *Stachurski,* 642 F. Supp. 2d at 769.

In this case, Defendant's Terms of Use contain the following provisions regarding subsequent amendment of its terms,

> From time to time, We may modify or amend these Terms. If We do so, any such modifications or changes shall be reflected in the TOU or Incorporated Policies, as applicable, on the Site. We may also, but shall not be required to, notify You by email regarding any material changes to the TOU or Incorporated Policies. Whether You receive or review such notifications, You agree that You will be bound by any such changes and that it shall be Your responsibility to check the Terms Of Use, including the Incorporated Policies, as posted on the Site prior to accessing the Site or partaking in any Service. Your further use of the Service after any changes are

12

posted shall constitute further consent and agreement to the terms as changed or amended.

(ECF No. 17-1, at 2). The provision appeared in the Terms of Use under the bolded heading, "Changes to Terms of Use and Incorporated Policies." *Id.* The provision permits Modo to modify the Terms of Use, Modo was not required to notify platform users, and the modified terms were accessible via Modo's website. *Id.*

Here, the language of the provision allowing Defendant's unilateral modification of the Terms of Use appeared under the bolded heading, "Changes to Terms of Use and Incorporated Policies" is unambiguous and provides notice that the terms of the agreement may be modified: "From time to time, We may modify or amend these Terms... You agree that You will be bound by any such changes and that it shall be Your responsibility to check the Terms Of Use, including the Incorporated Policies, as posted on the Site prior to accessing the Site or partaking in any Service." (ECF No. 17-1, at 2). This provision also provides Plaintiff with notice that the terms could change and acceptance that any amendments to the Terms of Use could be accessed on Modo's website. *Id.* Accordingly, Defendant's ability to unilaterally modify the terms of the Terms of Use, including the arbitration clause, does not make the arbitration clause illusory.

### d.  Unconscionability

Kowalok's final challenge contends Defendant's arbitration clause is procedurally and substantively unconscionable. (ECF No. 22, at 22–30). But Plaintiff prevails under neither theory as detailed below. The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. "One such ground is unconscionability: If a party shows that an agreement to arbitrate is unconscionable, the agreement will not be enforced and, consequently,

the parties will not be compelled to arbitrate their disputes." *Dreher v. Eskco, Inc.*, No. 3:08-CV-325, 2009 WL 2176060, at \*14 (S.D. Ohio July 21, 2009).

In Ohio, "[u]nconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 358 (2008) (quoting *Lake Ridge Acad. v. Carney*, 66 Ohio St.3d 376, 383 (1993)). The doctrine of unconscionability includes two concepts, (1) procedural unconscionability, or individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, and (2) substantive unconscionability, or unfair and unreasonable contract terms. Under Ohio law, both elements must be present to find a contract unconscionable. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (quoting *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 143 Ohio App.3d 708 (Ohio Ct. App. 8th Dist. 2001)). "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Taylor Bldg.*, 2008-Ohio-938, at ¶ 33.

### i.  Procedural Unconscionability

In *Taylor Bldg.*, the court stated that,

Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' "age, education, intelligence, business acumen and experience … who drafted the contract … whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question."

"Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to

14

understand the language of the agreement, or similar factors." Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

*Taylor Bldg*., 2008-Ohio-938, at ¶ 44.

In support of his procedural unconscionability argument, Plaintiff contends that the "adhesion, lack of meaningful choice, concealment of critical terms, and Modo's deliberate exploitation of compulsive gambling behavior" render the arbitration agreement procedurally unconscionable; therefore, the agreement is unenforceable. (ECF No. 22, at 25). Plaintiff asserts, "[the Terms of Use] [are] a standardized, non-negotiable agreement drafted unilaterally by a sophisticated corporation and imposed on consumers on a take-it-or-leave-it basis with no opportunity for Plaintiff or any class member to negotiate or modify any provision." (ECF No. 22, at 24). Additionally, Plaintiff emphasizes the difference in bargaining power of the parties as well as the supposed complexity and length of the agreement. (ECF No. 22, at 25). "The purported arbitration clause and class-action waiver are buried deep within a lengthy, single-spaced, boilerplate agreement—sections 16 and 17 of 20, spanning pages 16 through 24 of a 25-page document—among a litany of dense language and cross-referenced definitions." *Id.*

The Ohio Supreme Court referred to a contract of adhesion as a "'[s]tandardized contract form offered ... on essentially [a] 'take it or leave it' basis.'" *Sekeres v. Arbaugh,* 31 Ohio St. 3d 24, 508 N.E. 2d 941, 946 (1987) (quoting Black's Law Dictionary 38 (5th ed. 1979)). Contracts of adhesion are generally, "contracts drafted by one party without regard to the concerns of the other party; they are created without meaningful negotiations." *Jones v. U-Haul Co. of Massachusetts & Ohio Inc*., 16 F. Supp. 3d 922 (S.D. Ohio 2014) (quoting *Ohio Univ. Bd. of Trustees v. Smith,* 132 Ohio App. 3d 211 (4th Dist. 1999)). Where a contract is voided for being one of adhesion, it is generally on the basis that it is unconscionable from a procedural standpoint. *Id.*

15

Yet the arbitration agreement at issue is not an adhesion contract or procedurally unconscionable under Ohio law. Plaintiff contends that the agreement was offered on a "take it or leave it" basis without any opportunity for Plaintiff to modify the terms of the agreement. (ECF No. 22, at 24–25). But an arbitration agreement is not procedurally unconscionable when, as here, Plaintiff had the opportunity to reject the arbitration agreement and failed to do so. (ECF No. 17, at ¶ 21); *see Legair v. Circuit City Stores, Inc.*, 213 F. App'x 436, 439 (6th Cir. 2007) (finding no unconscionability because an arbitration agreement is not adhesive if there is an opportunity to opt out of it). Here, Plaintiff had the opportunity to opt out of the arbitration provision within 30 days of entering into the arbitration agreement but continued to access Modo's platform. (ECF No. 23, at 7). The presence of this opt-out provision weighs heavily against a finding of procedural unconscionability, as it establishes that Plaintiff retained a meaningful choice and was not compelled to accept arbitration as a condition of using the service.

Additionally, Plaintiff repetitively discusses "an acute disparity in sophistication and bargaining power" and the standardized nature of the arbitration agreement, yet Ohio courts find that neither a preprinted contract nor inequal bargaining position suffice to render a contract procedurally unconscionable. (ECF No. 22, at 24–26); *see Neel v. A. Perrino Constr., Inc.*, 113 N.E. 3d 70, 77–78 (Ohio Ct. App. 2018); *see also Amos v. NVR, Inc.*, 2022 WL 980676, at *6 (S.D. Ohio Mar. 31, 2022) (finding pre-printed purchase agreement produced by Defendants' attorneys and offered in an interaction with substantial inequality in bargaining power unavailing under procedural unconscionability standard); *Conte v. Blossom Homes L.L.C.*, 2016-Ohio-7480, 63 N.E.3d 1245, ¶ 25 (8th Dist.) (finding no procedural unconscionability when the plaintiff did not know what arbitration was, he was unable to understand the terms of

the agreement, and pressured to sign the contract). Courts evaluating procedural unconscionability consider the totality of the circumstances, including factors such as education, experience and the opportunity to read and understand the agreement. *See Taylor Bldg*., 2008-Ohio-938, at ¶ 44. Here, Plaintiff makes no allegations of any issue regarding his general education or intelligence. (ECF No. 22, at 24–26). Nor does Plaintiff allege that he lacked sufficient time or mental capability, to read and comprehend the agreement. *Id.*; *see Hurst v. Enter. Title Agency, Inc.*, 2004-Ohio-2307 (11th Dist.).

Furthermore, Plaintiff's contention that the arbitration provision was concealed within a lengthy and complex agreement is unpersuasive. Plaintiff contends the arbitration provision and class action waiver "are buried deep within a lengthy, single-spaced, boilerplate agreement." (ECF No. 22, at 25). Yet the arbitration provision in the Terms of Use is presented in capitalized, bold typeface, and begins with "BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER" (ECF No. 17-1, at 18). The provision continues in bold typeface, "PLEASE READ THIS ARBITRATION & CLASS ACTION WAIVER AGREEMENT (THE "AGREEMENT") CAREFULLY BECAUSE IT REQUIRES YOU AND MODO TO ARBITRATE CERTAIN DISPUTES AND CLAIMS AND LIMIT THE MANNER IN WHICH YOU AND MODO CAN SEEK RELIEF FROM EACH OTHER." *Id.* Courts have consistently found no procedural unconscionability where arbitration provisions are clearly labeled and not hidden in fine print. *Taylor Bldg.,* 2008-Ohio-938, at ¶ 46 (the arbitration clause was not unconscionable as it appeared in standard, rather than fine print and it was not hidden); s*ee also McCaskey v. Sanford-Brown Coll.*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 26 (finding an arbitration agreement not procedurally unconscionable where its print was "not exceedingly small" and it contained a sentence in all capital letters stating, "this contract contains

17

a binding arbitration provision which may be enforceable by the parties"). As described above, both the arbitration clause and the class action waivers are presented in a combination of capital letters, bold text, and prominently presented rather than concealed or buried in fine print. (ECF No. 17-1, at 18). Consequently, there can be no procedural unconscionability as a matter of law.

As Plaintiff did not meet his burden of establishing procedural unconscionability, this Court will not address substantive unconscionability. *See Maynard v. Valley Christian Acad., Inc.*, 2017 WL 3594670, *8 (N.D. Ohio Aug. 21, 2017); *see* also *Dantz v. Am. Apple Group, LLC.*, 123 Fed. Appx. 702, 709 (6th Cir. 2005) (since the court found a lack of procedural unconscionability, the court indicated that it need not reach the issue of substantive unconscionability).

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court GRANT Defendant's Motion to Compel Individual Arbitration.

Dated: April 24, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).